The next case is number 057190 Elizabeth H. Bonner against the Secretary of Veterans Affairs, Mr. Bonner. May it please the Court, Counsel. This case raises issues of compliance and interpretation and connection with the procedures followed by the Board of Veterans Appeals and the Veterans Court. As an overview of my next ten minutes, I'd like to point out two issues that I would like to principally address. Recall we are appealing from the final judgment of the Veterans Court, the widow is seeking dependency and indemnity compensation for her husband's service-connected death. The two principal errors that we would like this Court to review that occurred below, the first has to do with an exceeding of the jurisdiction of the Veterans Court by it. In finding a fact, the actual cause of death of the veteran, which is central to the case, where the Board of Veterans Appeals had not decided it. So I noticed that, for example, the absence of a jury box in this courtroom. There also isn't one in the Veterans Court. The proper place for fact-finding in the scenario of veterans claims is before the Board of Veterans Appeals. The jurisdiction of the Veterans Court is limited to reviewing decisions of the Board and the Veterans Court cannot find facts in the first instance adverse to the claimant where the Board hasn't done so. Our request with respect to this default is that this Court send the case back to the Board for proper adjudication of the actual cause of death. The second issue, the jurisdiction by the way of this Court is under 7292, where there is an excess of statutory jurisdiction and also where the ruling is in violation of the statutory right. With respect to the second issue, first being cause of death, the second is what was the claim, whether the claim itself for cancer should be read literally, whether the words mean what they mean, or whether the Veterans Court is free and the Veterans Administration to basically interpret a direct claim into oblivion. The Veterans Court construed this Court's decision in Moody in a way that is contrary not only to the holding of Moody itself, but also contrary to Supreme Court precedent. In other words, the interpretation put on Moody by the Veterans Court would have Moody itself, this Court's decision, be contrary to decisions of the Supreme Court with respect to the interpretation of words. With respect to the second default, we would also ask this Court to clarify its holding in Moody, to reaffirm it says what it says, and to order that the Board of Veterans' Appeals consider Moody as it was written by this Court and also apply a Supreme Court precedent that was ignored and not employed by the Court below. In what respect was that ignored? With respect to the Moody argument, Your Honor? Yeah. Ignoring with respect to the laws as follows, there is a series of Supreme Court cases that we cited in our brief that would be Perrin v. United States, 444 U.S. 37, and Leocal v. Ashcroft, 543 U.S. 1, 2004, a unanimous Supreme Court decision, sort of a rare thing, holding that absent explicit definition to the contrary, words will be interpreted as taking their ordinary contemporary common meanings. There was no discussion at all of this binding precedent of the Supreme Court by the Veterans' Court or by the Board of Veterans' Appeals. And here we have the word cancer. It's in black and white. It's in the appendix before you, written in the hand of the widow, saying what it says. The claim was what it is. Now, the Board and the Veterans' Court are free to say, well, the evidence didn't support that claim, therefore we're going to deny it. That's not what they did. They backed up and said the claim to begin with wasn't for cancer. It was only for non-Hodgkin's lymphoma. That's a violation of law. They're not entitled to do that. So that's the precedent that's been ignored below. I'm sorry, non-Hodgkin's or Hodgkin's? They said that the claim for cancer did not encompass non-Hodgkin's lymphoma, although they did say it encompassed Hodgkin's lymphoma. So they're willing to select one but not the other. They can't do either. Now, a claim for cancer is a claim for cancer, period, and they're required to deal with it. If they want to narrow it, they can ask the widow. If they want to subject her to a process of interpretation, that's fine, but she needs to be included in that. But wasn't the available evidence in 1975 indicating that it only supported a Hodgkin's disease type of cancer? First, I'd refer this court right now to page 13 of our opening brief. On page 13 of our opening brief, we recite an analysis, just from the pages of the National Naval Medical Center's autopsy protocol. In that protocol, that is a self-impeaching document that reflects, to answer your question, yes, there was evidence in the record of that effect. And that is laid out just by taking a look at what was actually in the National Naval Medical Center's autopsy protocol. You should be looking at a page. I hope it has bullets on it. It's not page 13. It's page 12 of our brief. Now, let me tell you how I saw the case and tell me where I've gone wrong. It seemed to me that the way the case had developed was that it was discovered that there was an error in the original autopsy. And that the original autopsy, which said that the veteran died of Hodgkin's lymphoma or Hodgkin's disease, was incorrect. That he actually died of non-Hodgkin's lymphoma, which is cancer. Yes. And which is on the table list where causation, where service connection does not have to be proven. It's presumed. Yes, it's more than presumed. But is your position then, therefore, that the error of the court was in failing to enforce, recognize, and enforce the fact that there had been an erroneous autopsy which had been corrected? Is that what this case is about? The answer is yes and no. And I'll explain to you. We're not attacking the 1976 decision of the regional office. That is not before this court, even though the government spends a lot of time about it. That would come before this court under a claim for Q, clear and unmistakable error. That hasn't been filed. Our suit comes because of a, basically a, I think unique or close to it, issue of law. The regulation that added non-Hodgkin's lymphoma says that the presence of this after service to Vietnam is sufficient. Not as presumed to be, just flat out is sufficient to establish service connection for that disease. That regulation was promulgated in 1990. It was made effective. There was, like, much discussion. There were, like, three precedent opinions cited in our brief of the general counsel. McKay cites them with approval. Making it effective in 1964. And the cases of its, Roughton, which is this court's case, and also Pellegrini, which is the Pellegrini II, which is the Veterans Court case, say that if we ever do get back there, we get a new hearing. But that's not, the case is presented here. The error that we're alleging here is that the Board of Veterans' Appeals, in 2001, was required to decide whether or not this, the National Labor Medical Center autopsy protocol from 75, diagnosing Hodgkin's disease, and the 1991 review of that, 1995, excuse me, done by the National Institutes of Health, finding error. Which one of these establishes the cause of death for purposes of applying 3.313? But isn't that a factual determination? It sure is. And we're not asking you to make a factual determination. We're not asking this court, other than in our constitutional argument later on, but for the purposes of this part of the argument, absolutely not. We're not asking you to decide which of these two decisions, the National Labor Medical Center or the NIH, is correct. In fact, what we're complaining about is that the Board of Veterans' Appeals is required by statute to find this and didn't do so. They said, well, we assume it without deciding. By doing that, they not only didn't, they failed to execute their statutory requirement of finding central facts and telling us why. But number two, they denied the appellant the right to have a non-appealable favorable judgment made. If we win in the Board of Veterans' Appeals, the government can't appeal it. So that's a statutory right that was violated by the Board of Veterans' Appeals doing something they can't do, which is assuming central facts without deciding them. Perhaps the district court can do that because there's factual review beyond. Perhaps this court can do it. But there's a statutory requirement that the Board of Veterans' Appeals make facts. I can give you the site if the court wants it. It requires them to find facts and say why they're finding the facts. That's where the facts should be found. Our complaint is they didn't do it. It led the Veterans' Court into terrible error. The Veterans' Court affirms a judgment made by the Board of Veterans' Appeals that the Board of Veterans' Appeals said it wasn't making. They flat out said, we're not making this decision. We're assuming it without deciding it. Then we have this bizarre situation where the Court of Veterans' Appeals says, well, we're affirming that decision, finding the cause of death to be Hodgkin's. It's totally beyond the jurisdiction of the Court of Veterans' Appeals to find facts adverse to the claimant where the Board hasn't found them. Furthermore, the jurisdiction of the Court of Veterans' Appeals is limited to decisions of the Board. And the Board said, we're not deciding this. Now, the Board is entitled, as the case from this court, to decide matters in the alternative. But that's different from assuming without deciding. They're the fact-finding body, and they didn't do what they should have done, didn't give us the decision, just decide. So we're not asking you to decide what the facts actually are. What we're complaining about is a process here and an excess of jurisdictional action by the Veterans' Court in affirming a decision the Board never made. What, in fact, actually I think happened, as a matter of fact, the Court of Veterans' Appeals says so. They go back to a 1995 decision of the regional office and say, well, you know, the regional office found this, and the Board didn't disturb it. Now, you actually have to take a look at the facts, because that sounds when you say, well, the Board didn't disturb it. Well, you know, they must have looked at it, considered it, and ruled on it. No, what they said is, we're assuming this without deciding it. So that's the issue with respect to the excess of jurisdiction. What we're asking for is somewhere along the line, and the place where that should occur is before the fact-finding body, the Board of Veterans' Appeals. We're asking this Court to tell the Board, no, you can't assume central facts without deciding them. You must decide them, decide this fact. With respect to the second error, it has to do with the interpretation of this Court's decision in Moody. I've already touched upon it with respect to Judge Gers' question. Moody holds in this Court that claims are to be sympathetically construed, and that all claims nascent in the evidence surrounding the claims are to be developed. The Supreme Court has held in the Perrin case and Leocal v. Ashcroft that words mean what they mean. I know recently, about two years ago, this Court cited, I think it was Hans Christian Andersen and the P being at the bottom of the mattress. To that, I would basically add Alice in Wonderland to this. Words have got to mean something, and the Supreme Court has told us how to construe words. This law has to be applied. It was not applied. The default in applying applicable law is an issue within the jurisdiction of this Court. As a matter of fact, this Court has jurisdiction under 7292 to determine whether the Veterans' Court misinterpreted the Court's own rulings, and that's Moody itself. And also, failure to consider applicable law is a decision by the Court on a rule of law over which the Federal Circuit has jurisdiction. That's Wilson v. Principe, Judge Newman, you probably recall that case, 391-3-1203, 2004 from this Court. I have additional arguments. I see that I'm on my rebuttal time. May I reserve it? Let's hear from the other side, and we'll save your rebuttal time, Mr. Bonner. Thank you. Mr. Secretary? Thank you, Your Honor. May it please the Court. The gravamen of Mrs. Bonner's appeal is that the 1975 claim for cancer embodied a claim for death due to non-Hodgkin's lymphoma. The linchpin of the claim, however, is that Mr. Bonner died from non-Hodgkin's lymphoma. As the Court has noted, that is a pure factual determination and not a fact on which this Court's jurisdiction rests. But as a matter of law, if accepting that he died from the non-Hodgkin's and that there is a necessary statutory connection between non-Hodgkin's lymphoma and service connection, and which statute was apparently not applied and therefore must have been inappropriately perceived or interpreted, doesn't that resolve the question of at least appellate review of how the statutes are being viewed? I don't believe it does, Your Honor. There were three factual determinations with respect to the cause of death. The first determination was made in 1975, the second one in 1995, and the third in 1997. And Mr. Bonner says that the Board erred in not considering all of these and reaching a conclusion as to what was in fact the cause of death. Yes, Your Honor, and that latest 1997 factual determination as to the cause of death could have been attacked as clear and unmistakable error, but it hasn't been. But importantly, to get to his argument as to the 1995 claim for cancer, again, even if it was construed to embody a death from non-Hodgkin's lymphoma, you still need a factual finding that the death was due to non-Hodgkin's lymphoma. But that's his case, isn't it? Since the Board has to make these findings, they didn't do it. Oh, to the contrary, Your Honor. The Board, in fact, did. There's two specific findings of fact that go to the cause of death, one being that the cause of death was Hodgkin's disease, not non-Hodgkin's lymphoma, and in support of that factual determination... Was that in 1975? No, they are then, at that point, Your Honor, looking at all three determinations, and they are endorsing the Secretary's determination that it was Hodgkin's disease, specifically citing the autopsy report and the death certificate. But what I'm asking, though, is the 1975 death certificate cause of death was not just cancer, it was Hodgkin's disease. Oh, absolutely, Your Honor, and that's a very important point because if the application was for death due to cancer and no death certificate or other medical records were available, that claim could not have been adjudicated. It could not have been adjudicated because there was not then, nor is there now, any presumption that cancer is caused by either exposure to dioxin or to radiation. So there had to be a specific form of cancer diagnosed, and then there had to be a causal connection. The causal connection could have been proved directly or it could have been through a presumption. But a claim for cancer in and of itself is legally and factually insufficient to support an award for DIC benefits. So at the time of the 1975 decision, it was, in effect, a claim for DIC based on Hodgkin's disease, and there was no presumption at that time that Hodgkin's disease was caused by either radiation or exposure to dioxin. But I gather that the government was not disputing that the second autopsy was correct. The Secretary found, as a matter of fact, that Hodgkin's disease was the cause of death. That wasn't what I asked about. I'm sorry? I thought they were not disputing that the second autopsy, which said the cause of death was non-Hodgkin's lymphoma, was correct. Your Honor, there was evidence that the cause of death was Hodgkin's disease. There was evidence that the cause of death was non-Hodgkin's lymphoma. The Secretary evaluated that body of evidence, including the 1995 evidence, and concluded still that the cause of death was Hodgkin's disease. And it's very interesting. Did the Secretary say the second autopsy was incorrect? I don't understand. I don't think you're answering the question. I'm really trying to understand how the government treated these two conflicting results. The Secretary looked at it from both perspectives, Your Honor. They said, okay. What do you mean by both? By whether it is Hodgkin's or non-Hodgkin's lymphoma. And that is the alternative or the hypothetical. They're in conflict. So one or the other is incorrect. And I don't recall the Secretary saying that the second one was incorrect. I thought it was accepted that the second one was the correct one. No, there was a factual finding that the cause of death was Hodgkin's disease. Factual finding by who? By the Secretary. It was endorsed by the— By the Secretary? You mean by the board? Yes, and by the board also. The board did not— I don't recall that the Secretary made any findings in this case. The regional office made a factual determination three times— That's the original office? Yes. What do you mean by the original office? I'm referring to the Secretary, Your Honor, not to the board. So the decision that went up to the board was an appeal from the denial of the DIC benefits back to 1975. But what the Secretary did and what the board did was look at the alternative, hypothetically, what if Mr. Bonner had died from non-Hodgkin's lymphoma? What would have been the result? That then would have been a reopening of a claim based on new and material evidence. That is a new diagnosis. Would that be new and material or acute at that point? There was never any acute challenge to either. I understand that, but you're saying this would be new and material evidence. Yes, it would have been new and material evidence. But why not acute? Because the death certificate and the information was already in the record in 1975. Because when that 1975 decision was made, it clearly wasn't clear and unmistakable error. There was no evidence of non-Hodgkin's lymphoma. So that was a very well-supported diagnosis and conclusion. Was that discussed on the record? I thought the slides they looked at were the 1975 slides. Yes, they were. That the body was buried or whatever it is. The NIH report in 1995 basically was looking at the 1975 information, was it not? Yes, it was, Your Honor. And they came up with a different conclusion. Yes, they did, Your Honor. Saying it was NHL and not Hodgkin's disease. That's correct, Your Honor. So if that's the case, then it would be acute, wouldn't it? Be that as it may, Your Honor, it was still a reopening of a claim. And so that the effective date of the award, and Mrs. Bonner did, in fact, get the DIC award, would have been the date of her claim, which was November 1, 1995. Not necessarily. That's a separate issue, isn't it? The effective date to be determined separately. It is a separate issue. It's not a matter of law. What is a matter of law, Your Honor, is whether or not that 1975 claim was a claim for the same benefit, that is DIC, based on death from non-Hodgkin's lymphoma, and whether Mrs. Bonner was otherwise eligible for that award in 1975. So that's a two-pronged test. He'd been dead for the 20 years, so it isn't as if he developed a different form of cancer 20 years later. Certainly not, Your Honor. But this is the only instance of a regulation that is made retroactive to the first day of the Vietnam War, August 1964. So the most you can get- It isn't the error of law that it was not applied retroactively, even though the statute says that it is presumed without proving causation. Right. For both Hodgkin's disease and non-Hodgkin's lymphoma, there is the presumption of service connection. So that really isn't an issue. If the secretary and the board had found the cause of death was non-Hodgkin's lymphoma in 1995 or 1996 when the decision was made,  is it retroactive to 1975? And they said no, it was not going to be retroactive to 1975 because Mrs. Bonner failed to meet the two-pronged test. She failed to establish that the 1975 claim was a claim for death due to non-Hodgkin's lymphoma, and she failed to demonstrate that she was otherwise eligible for the DIC benefits because at that time there was no evidence that non-Hodgkin's lymphoma was the cause of her husband's death. So they construed this in a way that was most beneficial to Mrs. Bonner. It's hardly an adverse decision. By finding Hodgkin's disease, she got benefits retroactive for one year prior to the date of her application. If they had found non-Hodgkin's lymphoma is the cause of death, she would have lost one year of benefits. That is why they... Why is that? Why wouldn't it have gone back to 1975? Because of not meeting the two-pronged test. If it's non-Hodgkin's lymphoma, you still must meet the two-pronged test of demonstrating that the original claim was for non-Hodgkin's lymphoma, and you were also eligible to receive benefits based on that in 1975. Why would she have to prove there would be non-Hodgkin's lymphoma back in 1975 when the death certificate supposedly by experts said Hodgkin's disease, which was later proved wrong? So why can't that be a Q-type of a procedure? Well, I think there's two problems. One is the secretary found as a factual matter after weighing all of the medical evidence generated in 1975 and also generated by NIH later in, of course, connection with an award of compensation to Mrs. Bonner for exposure to radiation. And so in order to be awarded the compensation under RICA, there had to be a finding of non-Hodgkin's lymphoma related to exposure to radiation. So the secretary looked at all of the medical evidence, and the bottom line is made a factual determination that is really not reviewable that the cause of death was Hodgkin's disease. Now, if the agency had made the determination it was non-Hodgkin's lymphoma based on the later NIH evidence, the outcome would have been the same, i.e., she would not have been awarded benefits retroactive to 1975, and in fact she wouldn't have had that one-year window which you only get when there's liberalizing legislation. Are you saying that she is now getting the same benefits retroactive to 1975 than she would if the diagnosis were non-Hodgkin's? No, Your Honor. I'm saying that with a diagnosis of Hodgkin's disease, she's getting benefits for one year prior to the date of her application because that decision was based on intervening, liberalizing regulations which created a presumption of causation. For non-Hodgkin's lymphoma, she would not get that one year. No, she would get a presumption going back to the military service. No, Your Honor. She would just get it from the date of the claim unless she could meet the two-prong test. So, for example, if in 1975 an application was made for death due to non-Hodgkin's lymphoma, it would have been denied because there was no direct evidence of causation and there was no presumption. How do you know there was no direct evidence? We now have at least on the face clear evidence that the first autopsy was the data were incorrectly read. I'm not talking about diagnosis, Your Honor. I'm only talking about causation. So in 1975, if the diagnosis had been non-Hodgkin's lymphoma, you don't just get benefits based on that. You have to demonstrate either through direct medical evidence, epidemiological evidence, there is causation or... I thought the statute presumed causation, service connection for non-Hodgkin's lymphoma. I thought that's what this is all about. Your Honor, that happened long after 1975. But it made it retroactive by statute. Only if the original claim was for non-Hodgkin's lymphoma. Why wasn't it for non-Hodgkin's when she said cancer? Why couldn't it be interpreted for either one? Oh, because in this case, Your Honor, it was very, very specific that this retroactive effect of 3.313 was only for non-Hodgkin's lymphoma. Clearly it was not for anything else and no one has argued to the contrary. So you're still faced with this situation. So if there had been a claim for death due to non-Hodgkin's lymphoma in 1975, there's no direct... There was. There was a claim for cancer in 1975. And they misdiagnosed what the cause of death was. Your Honor, I think it is similar to the Ephraim case that this Court decided. There's a claim for a psychiatric disorder. In that case, it was depressive neurosis and it was denied. Some time passed and now there's a diagnosis of post-traumatic syndrome. And this Court found that post-traumatic syndrome, yes, it is a psychiatric disorder. Yes, it's closely connected to this depressive neurosis. But it's a separate diagnosis and therefore it's a new cause of action based on new and material evidence. And so it is reopening a claim and there is no retroactive effect to it. Cancer would be the same thing. If there had been no evidence of the specific form of cancer in 1975, just the claim for cancer would have to have been denied as being not subject to adjudication. Like a claim for psychiatric disorder with nothing else would similarly have been denied. So you're saying a generic claim can't be made on cancer alone? It cannot be made, Your Honor. Any kind of generic? Exactly correct, Your Honor. And the agency carried out what is now their statutory obligation under the statute, under Moody and its progeny, to determine, well, what kind of cancer? Let's get the medical records, determine what kind of cancer it is, and then see if causation can be established. Okay. Okay. Thank you. All right. Thank you, Ms. Archer. Thank you. With respect to Dr. Mazar's last question, first, ephium dealt with mental disorder, which is like physical disease. It is one of the three giant categories that covers veterans' disabilities, the other being physical trauma. With respect to cancer, that is a specific disease. Now, there are subsets of it, but no one has ever ruled that that is not a precise enough claim. Number two is the Veterans Administration denied this claim as written. They didn't go back to Mrs. Bonner and say, Excuse me, we think your claim is too broad. We're going to deny this on the basis of Hodgkin's disease. What do you say? They didn't say any of that. What they did is denied the claim as written. So there was no complaint, no notice to Mrs. Bonner, no nothing, that this complaint of cancer was too broad. Number two is it was plenty adjudicatable. We pointed that out in our brief. All the Veterans Administration had to do is say, We're taking a look at this National Naval Medical Center document. We find that Hodgkin's disease is not service-connected, which it wasn't at the time. We also find there's a lot of evidence here about non-Hodgkin's lymphoma, everything on page 13 of that brief, that ended up with the NIH diagnosis that the Navy had made a mistake. May I pass something up, please? There's one page from the record. Very good. To the bailiff. Have you shown it to counsel? Yes, I've shown it. Here's the point. The government has just told you that in 1997 was the last determination that Hodgkin's disease was the cause of death and that the secretary had done so. Yes, the secretary at the regional office level below the Board of Veterans' Appeals. And our complaint is that the Board of Veterans' Appeals should have reviewed the 1997. We asked them to. We complained about the following. If you look at the last sentence of the first paragraph, Your Honors, there is a letter from the Department of Justice to the Veterans Administration telling them what this thing means. Then in 1997, a month after they got that letter, the regional office said there's no evidence at all of non-Hodgkin's lymphoma. They're looking at that letter, which they said, by the way, in their report, they refer to this as a letter from the Department of Agriculture, and they say there's no evidence of non-Hodgkin's. They had the National Institutes of Health report in front of them, transmitted by that letter, which they referred to as from the National Naval Medical Center. So the level of review, that's what we appealed to the Board. We appealed to the Board saying this is terrible. This is just shoddy work. It is unfair to the veterans' memory. It's unfair to the veterans' widow. You've got a statutory requirement to do a better job of judging, and we're entitled to appeal it. What we got out of the Board was we were going to assume it without deciding it. So that is the complaint here, that this issue of the two diagnoses, I agree that from reading the record here, there's no doubt in the world, as a matter of fact, I must say I compliment counsel on not saying that the petitioner failed to prove this below. The statements by the government are that the Veterans Administration opinion is that they failed to do it below. Why? Because the opinion from the Department of Justice is right in front of you. Totally sloughed off by the regional office, and not dealt with by the Board. We had a statutory right to have the Board resolve this issue. So we're asking you to send it back to the Board and instruct them to resolve it. Thank you, Mr. Bonner, and thank you, Ms. Oda. The case is taken under submission.